(35 Misc. Rep. 607.)

## BUSCHMANN v. CITY OF NEW YORK.

(Supreme Court, Special Term, Queens County. July, 1901.)

1. NEW YORK CHARTER—POLICE—REDUCTION OF CAPTAIN.

The charter of New York of 1897 (section 281) gave the board of police commissioners the power to fix and assign the rank and duties of members of the police force of the several municipalities consolidated. Section 279 provided that the officers of the police force of Long Island City should be members of the police force. *Held*, to give no power to the board of police commissioners to reduce a police captain of Long Island City to the rank of patrolman in New York City at a reduced salary.

2. SAME—RIGHT TO SALARY.

Where a captain of police was illegally reduced to the rank of patrolman, and protested against the reduction, but served as patrolman, and began legal proceedings to procure recognition as captain, his administratrix could recover from the city of New York his salary for the time he served based on the pay of a police captain, less what he had been paid as patrolman, and less his dues to the police pension fund.

3. SAME—RANK AND DUTIES.

The charter of New York of 1897 (section 281), empowering the board of police commissioners to fix and assign the rank and duties of transferred members, applies only to cases where a police officer before the consolidation had been acting with title and rank not authorized by the consolidation, and did not authorize the board to reduce the rank of a captain after consolidation.

Action by Kate Buschmann, administratrix of Henry Buschmann, against the city of New York. Judgment for plaintiff.

Thomas P. Burke (Geo. W. Stephens, of counsel), for plaintiff.

John Whalen, Corp. Counsel (James T. Malone, of counsel), for defendant.

GARRETSON, J. All of the material allegations of the complaint are admitted by the answer, the denials being of conclusions of law. The following facts appear in the case: On December 31, 1897, Henry Buschmann, the plaintiff's intestate, was a captain of police in Long Island City. On February 1, 1898, the board of police commissioners of the defendant refused to recognize him as a member of the police force in any other capacity than that of a patrolman, and assigned him to duty as such. On February 26, 1898, he

instituted a special proceeding in this court to secure recognition and reinstatement as a captain, and such proceedings were pending and undetermined at his death, on October 8, 1898. From the time of his assignment he served as a patrolman, and obeyed the orders of the board, protesting against this compulsory service, and against his reduction in rank and salary from that of a captain. While a captain of police in Long Island City, he was entitled to receive a salary of $1,800 a year, and his right to that rank, office, and salary was judicially determined by a judgment rendered on November 1, 1899, in an action brought in this court by the plaintiff against the defendant to recover such salary for the period from November 12, 1897, to January 1, 1898. During the time of his service upon the police force of the city of New York he received compensation as a patrolman at the rate of $1,000 a year. The result of the action of the board, therefore, was not only to degrade him from the rank of a captain to that of a patrolman, but also to reduce his salary from $1,800 to $1,000 a year. This action is brought to recover the difference in salary as a patrolman and that of a captain on the police force of the defendant, to which plaintiff claims her intestate was entitled by law, and hence of right, for the reason that his rank of captain in the police force of Long Island City at the time the Greater New York charter came into effect (January 1, 1898) was continued in the police of the greater city, and that the board of commissioners of police of the defendant had no power or authority, under the charter, to reduce him therefrom. The defendant makes but a single defense, and urges nothing on the submission hereof other than that, pursuant to section 281 of the charter (Laws 1897, c. 378), the board had power "to fix and assign the rank, title, duties, powers, and place of service" of the members of the police forces of the several municipalities consolidated, and that its assignment of Buschmann to the position of a patrolman is a conclusive answer to the plaintiff's claim in this action.

Section 279 of the charter provides:

"The lawfully appointed captain, sergeant and patrolmen of the police force of Long Island City, who shall be such when this charter takes effect, shall be members of the police force, specified in section two hundred and seventy-six of this act."

The police force of Long Island City was constituted and existed by virtue of chapter 5 of the act entitled "An act to revise the charter of Long Island City" (Laws 1871, c. 461), as amended by Laws 1893, c. 645. A careful reading of the Greater New York charter, and particularly of chapter 8 thereof, which creates the police department (section 270 et seq.), shows that the consolidation of the police forces of the several municipalities was intended to be made so that existing rank and grade should be continued, except only that where a policeman had been, prior to consolidation, acting in a rank, by a title, and with duties and powers at variance with those named and specified in the new force created by the charter, the board might, by virtue of section 281, cause him to be brought into conformity therewith. The police forces of the several consolidated municipalities were established under charters and statutes varying

in their terms in respect thereto, and the necessity for the exercise of the powers conferred by the section last cited, for the reasons above stated, is apparent from the reading of the several enactments. The charter has conferred no power upon the board to reduce any member of 'the police force in rank, whether transferred or appointed, and its powers, control, and authority over the police forces transferred, and over their tenure of such membership and removal therefrom, is declared by the section last cited to be the same as the said board should have over the members of said force appointed thereto by said board. The practical interpretation of section 281 made by the board of police commissioners in this case, that Buschmann, a captain, could at will, and by a mere resolution, be reduced to a patrolman, logically results in the somewhat startling proposition that in like manner a deputy chief, an inspector, any other captain, a sergeant, or a roundsman transferred from any of the consolidated municipalities may be reduced to an inferior rank, even to that of a patrolman. That such was not the intention of the legislature is also inferable from section 287, relating to first appointments under the charter, that "the captains of police shall be selected from, first, the captains, and, second, from the sergeants of the respective police forces transferred by sections 277, 278, 279 and 280 of this act," and from section 288, relative to promotions, that "sergeants of police shall be selected from among patrolmen assigned to duty as roundsmen, as provided by section 292 of this act; captains from among the sergeants; inspectors from among the captains; deputy chiefs of police from among inspectors and captains; and chief of police from among deputy chiefs, inspectors and captains." Such practical interpretation by the board is also negatived by section 283, relating to salaries, that "the salary or compensation of any of such members of the said police force as are specified in sections 277, 278, 279 and 280 of this act, as the same is lawfully fixed at the time this charter takes effect and immediately prior thereto, shall not be decreased." It is further negatived by section 299, relative to salaries of officers and members of the force, and their grade, based upon their years of service respectively, wherein it is declared, among other things, that the annual salary or compensation of each captain of police shall be $2,-750; that "all other patrolmen or policemen of the various police forces consolidated into a single force by the provisions of this act, shall belong, so. far as pay or compensation is concerned, to the grade indicated by the pay or compensation which they are respectively receiving on January first, eighteen hundred and ninety-eight. But nothing in this section contained shall be construed to affect in any other way the rights and privileges secured under the provisions of this act to the members of the various police forces consolidated into a single force by this act. * * * Any member of the forces so transferred not a member of the New York police force prior to January first, eighteen hundred and ninety-eight, whose salary falls between two grades, shall receive the salary of and be assigned to the grade next above the salary he is receiving at the time of transfer. Salaries of all officers in the forces so transferred, other

than officers in the New York police prior to January first, eighteen hundred and ninety-eight, shall be equalized on the same basis. If the difference in pay is not more than fifty dollars, the pay shall be equalized at once. If the difference is more than fifty dollars, the pay shall be made uniform within three years by equal annual additions." From the foregoing, I am clearly of the opinion, and have reached the conclusion, that the action of the board of police commissioners in denying to Buschmann his rank as a captain of the police force of the city of New York was an assumption of power, and wholly unwarranted by law; and that the plaintiff, as administratrix, is entitled to recover from the defendant his salary as a captain from January 1, 1898, to October 8, 1898 (the date of his death), less the amount received as pay of a patrolman for the period, and 2 per cent. of such salary to be deducted for the police pension fund, as provided by subdivision 10 of section 353.

Counsel for the defendant has cited People v. York, 44 App. Div. 539, 60 N. Y. Supp. 889, and People v. York, 48 N. Y. 611, 63 N. Y. Supp. 156, as conclusive authorities in support of his contention. These cases were before me at special term, and the learned appellate division affirmed the orders made in the first instance, holding by implication, if not in words, in the opinions handed down, that the language of section 281 was broad enough to admit of the action of the board which is challenged here. That question was not presented or considered at the special term; the assignment of Baldwin and Allen having been made by the board in obedience to a writ of mandamus in each instance, in which assignment the relators respectively acquiesced for about one year before asserting their claim to superior rank; and this fact, and the other reasons set forth in the several opinions written at the special term, were there regarded as decisive. It would seem that the question deemed controlling by the learned appellate division in the cases cited had not been fully presented to that court, and that the sections correlative to section 281, hereinabove referred to and considered therewith, had not been brought to its attention. I am not unmindful of the doctrine of stare decisis, yet, with due deference to what has been written by the eminent jurists in the Baldwin and Allen Cases, I am impelled to the conclusion reached in the case at bar, for the reasons hereinabove expressed. Judgment should therefore be entered in favor of the plaintiff against the defendant for the sum of $737.56 (being for 246 days' service at $2,116.66 per annum, less 2 per cent. for police pension fund, and $660.46 paid), with interest, and costs.

Judgment for plaintiff, with costs.